THE PEOPLE OF THE STATE OF NEW YORK ex rel. MICHAEL F. GLEASON, Respondent, *v.* LAWSON PURDY and Others, as Commissioners of Taxes and Assessments of the City of New York, Appellants. (Taxes of 1916.)

Second Department, July 31, 1917.

**Tax — assessment on uncompleted building in city of New York — charter, section 889a, construed — when building exempt from taxation.**

Under section 889a of the charter of the city of New York, providing that a building in the course of construction, commenced since the preceding first day of October and not ready for occupancy, shall not be assessed, the building must be taken as a unit in order to determine the right to exemption.

Thus, where a landowner erects a single building on his land, the lower floor to be rented for stores and the upper portion to be rented as apartments, the building is not subject to assessment if in fact on the first ·

day of October some of the apartments are not finished in substantial particulars, even though other portions are practically finished and some of them have been rented.

APPEAL by the defendants, Lawson Purdy and others, as commissioners, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 13th day of December, 1916, reducing an assessment on real estate.

*William H. King* [*Lamar Hardy, Corporation Counsel,* and *Charles J. Druhan* with him on the brief], for the appellants.

*M. F. McGoldrick* [*Joseph E. Haggerty* with him on the brief], for the respondent.

THOMAS, J.:

On April 21, 1915, the relator owned land which extended 40½ feet on Eastern Parkway and 120 feet and 7 inches on Kingston avenue, and thereupon he undertook to erect a building of seven stories, on the ground floor of which should be seven stores, entered from Kingston avenue, over which should be sixteen apartments, entered from Eastern Parkway. On October 1, 1915, five of the stores were occupied and open, and the rent of the five stores began October 1, 1915. Four apartments were occupied by families on October 1, 1915, and two of them had been so occupied for a short time before October first, at which date the leases began, although the rent ran only from October fifteenth. In such four apartments the relator testified that there remained undone "some little plumbing, and a little carpenter work, small things to be finished up." Such four apartments on October 1, 1915, were practically ready for occupancy. The remaining apartments were not finished in substantial particulars, and such was also the condition of the main hall and vestibule and certain of the stairs leading to the apartments. The work on the building continued into December. Section 889a of the Greater New York charter (Laws of 1901, chap. 466, as added by Laws of 1913, chap. 324) provides: " A building in course of construction, commenced since the preceding first day of October and not ready for occupancy, shall not be assessed."

The land was assessed at $12,000, and the assessment laid for the land improved as of October 1, 1915, was $45,000. So it appears that $33,000 was for the improvement. Was the building exempt from assessment? There was one lot and one building. The stores seem to have been ready for occupancy and five were occupied. Four apartments could be occupied with the inconvenience of some minor things to be done and the more noticeable inconvenience of some unfinished approaches. The twelve other apartments and some of the common ways were clearly in the course of construction. Did the finished condition of a part and the occupancy thereof make the building " ready for occupancy " and take it out of " course of construction," or did the unfinished part give it the status of a building in the " course of construction," and not " ready for occupancy? " The building is the unit for measuring the exemption. The exemption from, or liability to, assessment is not determinable by any degree of progress in building short of completion. A building in its entirety is not ready for occupancy when it is partly ready for use. If the question were whether a contractor had made this building ready for occupancy on October 1, 1915, it would be decided that he had not. The tenement house department refused a certificate of completion, but found sixty violations, and under section 1344 of the charter (as amd. by Laws of 1903, chap. 439) it could not be occupied. The relator seems to have become involved in difficulty for violation of that section. The normal use of a part of a building shows that such part is completed, but its usable availability could in other ways be made to appear, even if it were not in fact occupied. It is quite usual to finish a room, or rooms, or some particular part of a building, before the completion of the remainder. But such partial capacity for occupancy does not determine that the building is ready for occupancy. In the present case there is no bad faith, evasion or concealment. The first of October is the date when the letting in the fall begins, and chances to be coincident with the taxable status date, and the relator tried to have his building ready for the renting season. With some inconveniences to his tenants, in some cases enforced to take possession, he procured a portion of his building to be occupied

on October first, albeit as regards the apartments without compensation until October fifteenth. It was a saving prudence, but in my judgment it does not prove that his building was not still in the course of construction. That substantial and necessary work remained is undoubted. An owner would not be allowed to trifle with the completion of his building · in minor details provided it were substantially completed and reasonably ready for occupancy. That is not the present case. The appellant would have it appear that there was no separate assessment of the building. The return to the writ shows that the unimproved value of the real estate was fixed at $12,000, and its value with improvements was $45,000. The return also shows clearly that the assessment of the lot with improvements related to the building. If the building was in the course of construction, it was exempt, and the assessment was illegal. There was no occasion for showing that there was an overvaluation. The assessing officers do not pretend that the assessment beyond $12,000 related to the land unimproved by the building. They passed on the question of exemption, but they had no jurisdiction to assess the improvement, if the facts showed exemption. The facts were and are undisputed. The only question was whether, in the light of them, the statute of exemption applied. The assessors could not make it inapplicable by construing erroneously the statute. The building was exempt as a matter of law because the statute under the existing state of facts made it exempt. It was sufficient for the relator to show that the building was not completed. The relator's application was denied because, after re-examination and report by the deputy tax commissioner, it was decided " that the relator's building was ready for occupancy on October 1, 1915."

The final order should be affirmed, with fifty dollars costs and disbursements.

STAPLETON, MILLS and RICH, JJ., concurred; · JENKS, P. J., not voting.

Final order affirmed, with fifty dollars costs and disbursements.